All rise. Hear ye, hear ye, this Honorable Appellate Court of the Second Judicial District is now back in session. The Honorable Anne B. Jorgensen presiding. Please be seated. Your Honor, the second case on the docket for this morning is suit-23-0081, Henry, the marriage of Dennis McDowell, Petitioner-Appellant, and Colleen McDowell, Respondent-Appellee, arguing on behalf of the Appellant, Mr. Marios, and Kerry Adams. Arguing on behalf of the Appellee, Ms. Elizabeth Belt-Whitney. All right, are both sides ready to proceed? Yes, Your Honor. Then, when you're ready. Thank you. May it please the Court and the Counsel. We would be standing here today if the trial court had executed some reasonable production and maintenance. As the Court is aware, my client... How is it an abuse of discretion? What the trial court did, why is it an abuse of discretion? The trial court explicitly found that my client credibly showed a decrease in income from, what, $10,000 a month to $4,200 a month. That's more than a 25% decrease in income. And the Osset case that I've cited clearly says that a 25% decrease in income creates effectively a very clear indication of a change in circumstances. Moreover, the respondent in this case at the time of the divorce was making $0 a month. She was unemployed and at the time of the hearing was making roughly $1,400, $1,500 a month. So there was changes in income in both scenarios. As I pointed out, had there been a decrease of even $1,000 a month, she would be left with more in actual money to pay her bills than she was left at the conclusion of the divorce. At the time maintenance was set in this case, the idea was to set a scenario consistent with the statutory scheme that would allow her to sustain her lifestyle. And the Court at that time granted her $3,000 a month in maintenance, which represented 30% of the gross income. Had the Court in this case reduced by $1,000 a month, which would certainly have been reasonable, she would have been left with $3,400 a month. She actually would have had more money at her disposal following this hearing than she did when the divorce was finalized. What's problematic about this case is, I guess it's somewhat... So reducing it would have been a better ruling? Well, we're not... Is that really the standard? Well, I think the question that the Court should ask itself is, if you can't reduce on this fact pattern, when can you reduce? Is it appropriate for somebody to have to effectively liquidate the marital estate and their inheritance to pay support or maintenance to their spouse? Actually, marital estate, that brings up an interesting question. When you finalize... But you do agree it's abuse of discretion. It's absolutely an abuse of discretion. Because your opening brief says, this Court should reverse where the trial court's finding is against the manifest weight of the evidence. Let me just finish. Against the manifest weight of the evidence or reflects an abuse of discretion. You cite the Barilli case. What were the facts in Barilli? In which case was that? The case you cite on page 9 of your opening brief. I agree it's an abuse of discretion, so I'm not disagreeing with that. I think the manifest weight of the evidence matter only comes up in one context, and that is counsel did argue that there's a question as to whether the trial court found that there was a change in circumstances. On that issue, I think the court should look at whether the facts in this case, if viewed based on what the trial court found, it is against the manifest weight of the evidence to find that there was no change in circumstances. I personally believe that the trial court... But at the overall financial condition of the parties. Absolutely. The future, you know, the inheritance money that's coming. The inheritance is certainly a factor the trial court can look at, and ability to pay is a factor. Another point that I thought was, I was trying to wonder why did the trial court make this note, but he did note that Colleen was not seeking an increase. Right. Which is, I'm just wondering why the court made that, but inflation is something we cannot ignore. You know, a dollar today is worth about 78 cents than it was in 2013. And I think that that's a fair point. I think that the trial court also, in looking at the ability to pay, which I think is what the trial court focused, and I think that's where the trial court abused its discretion, looked at, A, the marital assets. And what I would submit to the court is, in a scenario, in any divorce case, when you split the marital assets, people are getting their share of the marital estate. To suggest that later, 9, 10 years after the divorce is finalized, that you now need to liquidate your share of the marital estate to pay. Well, here, if I could just go ahead and finish your thought. To pay maintenance, I don't think is a fair representation of what should be happening on a maintenance scenario. Again, this isn't a case where Mr. McDowell had $12 million in assets, like the Folly case that is relied upon by the court. He had $1 million in assets, more similar to Ossek. Unlike Ossek, his income went from $120,000 to $50,000. Ossek's income went from over $800,000 to $611,000. So the ability to pay $3,000 a month in maintenance is entirely dependent on, in Ossek, we were affirming the trial court's decision, correct? Correct. And here, we're looking at, and you're asking us to reverse the trial court's decision. And even if we were to agree with your argument, we would have to make a finding that the trial court's rationale was so wrong that no reasonable person would agree with them. Well, I guess, using the inflation context that Your Honor just brought up, I think you also have to look at the scenario that Mr. McDowell has put in here. His income, if he's paying $3,000 a month in maintenance. His income is going to be from all sources, including investments, correct? Correct. I could pay the $3,000 a month just off investments. Well, I think you can pay it if he liquidates investments, but there was no evidence that the trial court made any findings as to what his investment income was. I'm talking about interest income off of his investments. I see nothing that the trial court found that indicated that it found a certain amount of monthly income interest off investments. I mean, he has a home that's worth $350,000, and then he has some assets that may come from his mother. And again, the trial court made an obvious assumption. There's no question that he was going to inherit something. It wasn't clear what it was, but it was going to be in the vicinity of $600,000, $700,000. And what's the return on that investment? Well, if he makes 10% a year, he'd be making $70,000. That'd be an awfully good investment, and I'd love to get that for myself. I don't think that's a reasonable number. If he makes 5% a year, that's $35,000 a year. If he makes 5% a year, if you add that $35,000 to the 50, he's making $85,000. You still have a reduction in income of more than 25%. So I think what the trial court and where the abuse comes is effectively what the trial court has done is created a scenario where he must liquidate assets to pay maintenance, and there just is nothing based on the case law that I see that suggests that that's what the courts require. The Folly case I mentioned a little bit, very dissimilar. $12 million in assets. The guy was donating $2,000 a month in charity, $3,000 a month to an adult kid. The question there was the reversal was because it was reduced from $20,000 to $0. It was an outright termination of maintenance. The reversal sent the case back for a reasonable reduction. Now think about that. At $20,000 a month, had there been no reduction, that's $240,000 a year. That guy would have been paying. He could have liquidated his $12 million in assets over the course of 40 years in paid maintenance at $20,000 a month. $20,000 a month. And the court sent that case back for a reasonable reduction. The other case cited by the trial court, Verheens, is distinguishable. It's a child support case. The question there was when the individual had the child that late in life, did he contemplate that he would retire at some point in time and that child support would extend beyond retirement? It's not the same fact pattern here. The Carson's case that the trial court relied upon was a case based on duration being the issue, not based on income. Counsel cites the Waller case. Waller was a case that was decided based on the reduction being due to voluntary early retirement. That's not the fact pattern here. The judge very clearly found that Mr. McDowell or Dr. McDowell proved credibly that his income was reduced by factors beyond his control. The Carpenter case that counsel cites, income went from $80,000 to $100,000 to $40,000 to $50,000. The issue there was whether the maintenance was permanent or temporary. The trial court in that case, I mean the appellate court in that case, which I believe was a third district case, did find that a modification was appropriate and sent it back. So you look at those cases all together in OSSEC as well. I think reduction is appropriate, and that's what I believe based on the fact pattern in this case, the abuse of discretion is seen. We have effectively a scenario where if you look at just the incomes, and again there's no explanation as to why Colleen's income doesn't get more discussion in the trial court as well. She's making some income. So she's frankly not making anywhere near the income she should be making. The trial court is very clear about that. It finds her willfully underemployed. Yet despite the fact that she's making some income, there's no reduction whatsoever. And that's why this court did say, and I think he was pretty specific, he said the modification, I'm denying modification today, but things could change. And frankly that's why I'm here today, because I don't know what could change in this fact pattern. If my client stopped working altogether, he still has the ability under this trial court's reasoning to keep paying maintenance And that's the problem. That's why we're here. Again, in all these cases, generally speaking, maintenance comes from income. It shouldn't come from having to liquidate your marital assets. You've said that a couple times. Do you have any authority to support that? Well, I've cited the cases I've found that identify maintenance modifications. They seem to be focused primarily on the income. Again, Foley is a case that is fascinating to me, because a guy who has $12 million in assets and is giving away $5,000 a month is apparently entitled to some reduction in maintenance. I don't know how much, because it was reversed and sent back for that determination. But it is mind-boggling to me that that guy is entitled to some reduction, and Dr. McDowell, who credibly lost income because, again, let's look at his profession. He's a dentist. What happened at the time frame that this all happened? COVID. Nobody was going to the dentist's office and opening their mouth to have services done. He's 67 years old. Who wants to go become a new patient and a guy at that age group? It's frankly understandable why his income went down, and I think that the trial court did correctly find that his reduction in pay was credible. With all due respect, the question was, do you have any authority for the proposition that payment of maintenance should not come from the marital assets but should only come from income? I do not have authority that says that the appellate court or the trial court cannot consider all ability to pay. So in answer to your question, I apologize for not answering it directly. He still plays golf once a week, right? Yeah. He's got his lease through 2026. COVID is over. So people are going back to their normal activities, including seeing a dentist. There is a prospect that his likelihood, even with a lower number of clients, he's probably going to increase his income. I suppose that's correct. I think that the decision, however, should be made based on what's in the trial. Was it error, then, to look at the holistic financial picture of the parties? No, I think the trial court has the ability to look at the entire financial picture. I guess where I'm troubled here is looking at this financial picture, if you do the math, which I kind of set out in my brief, what you're basically saying is a 67-year-old guy is going to have to liquidate what little assets he has. He has a lot more than most people, and I get that, but he doesn't have as much as some of the other cases. At the rate that he would have to pay maintenance, given his income, he'd run out of money in his mid-70s, as I put in my brief. And I think that that's where the abuse of discretion comes in here. Had there been a reduction in maintenance of 300, 500, 1,000, some number that made sense based on the incomes of these parties, we wouldn't be here. He also sought a termination of maintenance, and we didn't even challenge that, because I understand why the trial court certainly would have been given a lot of deference in that finding. And so we're not challenging that, but we are challenging it on this fact pattern based on a huge change in income. The inheritances are interesting, too. Both parties inherited something, not just my client. Now, he inherited ostensibly somewhat more than she inherited, and as I pointed out, I think the difference is about $350,000. And, again, that's a lot of money for a lot of people. But at $36,000 a year, that doesn't get him very far. Gets him 10 years. Right. At age 77, he's out of money. They were divorced in 2013 for whatever reason. Don't know why the marriage broke down, but it did. There comes a point where, when you're looking at making explicit findings, that she's woefully underemployed. And I don't think it's unclear that both the initial trial judge, as well as the trial judge in this matter, made those findings. So she had nine years to do something to better her financial situation. I guess that's the time to sit down. Finish your thought. She had that amount of time to better her financial situation, did not do it, and yet she did a little bit. So she's making some money, and even that wasn't considered in a reduction. I think that's an abuse of discretion. Thank you. Counsel. Good morning. May it please the Court and counsel. And I'd like to note today I'm here with my colleague, Seema Shaffer, who did do the bulk of the writing of the brief. So credit to her. The fundamental point of the abuse of discretion, I think, is really where this case gets decided. Because I don't see that there was any abuse of discretion by Judge Hanson in finding that there was not a substantial change in circumstances in light of the information presented to the Court. Dr. McDowell has at least, as you indicated, going through 2026. He has not tried to bring in a younger associate to transfer his practice or to sell his practice. He has not stopped going to the professional events and functions that he has gone to and been a part of for his entire professional career. He's continued his lifestyle exactly as it has always been, in the merit of residence in a house that's worth at least $100,000 more than my client's home is worth. He continues to have the same cars that he has, continues to play golf every week. Nothing has changed in his lifestyle whatsoever. He hasn't tried to cut back on the hours of the staff. He hasn't fired any staff. He could be doing some marketing of his practice, but he's choosing not to do so. The interesting thing is that counsel focuses on what the earnings are from the practice, but that's not all of his income. What I think is really important to note and why Judge Hanson was completely on point when he made the decision he made is that Dr. McDowell received $80,000 in a cash-free inheritance in the year this was presented to the court, and he never disclosed that income on his financial affidavit. In fact, he testified he was holding check because he didn't want it to go in his bank account. He had $80,000 that was never discussed as part of the income analysis that counsel has been discussing today. In addition to that, my client received about $235,000 of an inheritance. She invested about $160,000 into the home that she lives in. And Dr. McDowell, his mother had passed away. It wasn't a potential expectancy. It was a she died and the estate was worth some amount, which she never did disclose. We only found out information that we found out regarding inheritance because we started to issue some subpoena to get some records that Dr. McDowell should have disclosed in the course of discovery. And I think that was a big part of why Judge Hanson made the decision he made. I also think that's why the statute with respect to succession. The judge did not comment on some of the arguments you're making here. But he heard that testimony. He heard that testimony, what I'm talking about, in his ruling. Correct. But I think that that's why the statute gives deference to the trial court in this sort of a circumstance because the trial court had the opportunity to observe the parties and to hear their testimony live in a living color versus reading it in a transcript. I also note that the statute for 510 discusses that contemplation of a future event, like that he may retire in the future, is not a basis for finding a substantial change in circumstances. There's been no change that's occurred as of this time on Dr. McDowell's end. You're saying that, and I gather these notes from the trial court judges' ruling, there was an Athena Count, Chase, Alliance, Edward Jones, B. Riley, and they have amounts that he found were attributable. You're saying that additional to that and not included in that is? An $80,000 payment. Thank you. Right. And none of those accounts were ever disclosed by Dr. McDowell. Judge Hanson was in the best position to judge the credibility of Dr. McDowell based upon those discovery issues and based upon the fact that in addition to the income that he has from his practice, he had $80,000 that he was just holding on to and not disposing, and that income is completely properly part of the income that should be considered for maintenance for my client. And I think that's where Judge Hanson asked why we weren't seeking an increase. Well, we didn't know about the $80,000 until we got to the trial, and he acknowledged it upon cross-examination. So, and then the issue is my client is really financially strapped. She doesn't have health insurance. She lives a very simple life. She works as an elderly caregiver, and that's subject to what the availability is and what patients need her. She is not living anything close to the lifestyle of the marriage and not living anything close to the lifestyle of Dr. McDowell. And that, I think, was also part of what the, I think, she can't afford to go ahead and ask for an increase and have it potentially denied. She just can't afford to spend money on fees for that purpose, especially when we didn't learn it until after, during the trial. The issue regarding the Ossa case and 25% decrease in the income is completely not correct once you factor in the $80,000 that Dr. McDowell had. And as Justice Burkett pointed out, the income that he will receive from investments, well, it's speculative because he doesn't have them invested. It's notable that Dr. McDowell testified in trial that he expected that he was going to live off the investments and the dividends and interest from those investments as his retirement. Well, that's lovely that he's going to be able to do that, but my client is not going to be able to do that. And that's why this was a permanent maintenance case in 2013 and it remains a permanent indefinite maintenance case at this time. So I'd ask that you affirm the lower court. Thank you. Any questions? You wish to reply? Just very briefly. Thank you. And that was negligent before not introducing my associate, my son, Nick Carrion. I said I'd be chastised greatly if I didn't do that, so now I have. The only comments I'd like to make is just directly comments related to what counsel argued. She brings up the fact that there was supposedly some nondisclosure of some instances and so forth, but what is clear in this case is that the trial court found Dr. McDowell credible. I think there's very clear indications that it found his decrease in income credible. So those comments may be, you know, speculation as to what the trial court decided, but the words written in the opinion or stated in the opinion, if it was an oral opinion, don't support that. The trial court found his evidence credible in this case. The fact that he intends to use his mother's inheritance as sort of his retirementing asset. He intends to use the interest. Right. Investment. Right. You know, that's, I think, what people do when they get an inheritance from a parent. Again, it defies logic to me, and I think it's an abuse of discretion to suggest that that interest should go to his former spouse of 10 years ago. Because, again, at some point in time, if you do the math, he's going to run out of money in this case. I'm not going to restate my position before I think we've argued this on both sides as to all the issues that I'm aware of. I think that the Osset case does show, in my opinion, a fact pattern similar to this case. I think that some reasonable reduction was appropriate in this case. I think the fact that a zero reduction was based on these facts ordered is an abuse of discretion. And respectfully, I'd ask the Court to reverse and remand with directions that a reasonable reduction be imposed. I don't know if there are any questions, but I have nothing further. Just one question. The $80,000 that was withheld, how should that affect our determination at all? Is it even relevant? I don't think it's relevant because the trial court certainly didn't note it, number one. And number two, at best, maybe there should have been a $40,000 additional split of marital assets back then, if everything counsel says is true, but I don't see why it would affect the case here. Is there a petition for contempt that's still pending? Not at this time. May I ask why should the $80,000 from his mother? My understanding, that wasn't the trial attorney. Why would that affect the division of assets at the time of the original divorce? I wasn't the trial attorney, so I can't hear what counsel argued about are things that aren't in the orders. I'm not really sure exactly what she's pointing to. It's not part of what was the decision here. But if it was a recent $80,000, again, half of $80,000 is $40,000. That's one year's worth of maintenance. You know, I think on this fact pattern, I don't think that whether that existed or not should factor into the equation in the decision on the matters before this Court. Are there any other questions? Thank you for your time today. Thank you for your time today. All right. We'll be in recess until our next argument or written decision.